IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-115-WJM

UNITED STATES OF AMERICA,

       Plaintiff,

v.

2.     MELISSA CHARRAN,

       Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Andrea Surratt, Assistant United States Attorney for the District of Colorado, and the defendant, MELISSA CHARRAN, personally and by counsel, Andres Guevara, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.  This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

## I.   AGREEMENT

### A. Defendant's Plea of Guilty:

The defendant agrees to

(1)    to waive indictment and plead guilty to an Information charging violations of 21 U.S.C. § 843(b) and 18 U.S.C. § 2;

(2)    waive certain appellate and collateral attack rights, as explained in detail below; and

(3)    agree not to contest forfeiture as more fully described below.

Page 1 of 11

Court Exhibit 1

**B. Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A). The Government agrees to move to dismiss Indictment 21-cr-115-WJM with prejudice, against this defendant only.  Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement and potentially file a superseding indictment.

Provided the defendant does not engage in prohibited conduct or otherwise implicate U.S.S.G. §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

**C. Defendant's Waiver of Appeal:**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1)    the sentence exceeds the maximum sentence provided in the statute of conviction;

(2)    the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 31; or

(3)    the Government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how her sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1)     the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2)     the defendant was deprived of the effective assistance of counsel; or

(3)     the defendant was prejudiced by prosecutorial misconduct.

The defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied §

3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

### D. Forfeiture of Assets:

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 21 U.S.C. § 853, whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere.  The assets to be forfeited specifically include, but are not limited to the assets listed in Attachment A.  The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action.  The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters.  Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his/her rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to him/her if notice is not sent within the prescribed time frames.  The defendant further agrees to the forfeiture of any substitute assets up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

## II.   ELEMENTS OF THE OFFENSE

The parties agree that the elements of 21 U.S.C. § 843(b) are as follows:

1.      The defendant knowingly used a communication facility, that is, the U.S. mail;

2.      In so doing, the defendant acted with the intent to commit, cause or facilitate the commission of a drug felony, namely 21 U.S.C. §§ 841(a)(1) and 846 (conspiracy to distribute and possess with intent to distribute a controlled substance); and

3.      The felony drug offense was actually committed.

The parties further agree that the elements of 18 U.S.C. § 2 are as follows:

1.      The elements of 21 U.S.C. § 843(b) were committed by someone other than the defendant; and

2.      The defendant intentionally associated herself in some way with the crime and intentionally participated in it as she would in something she wished to bring about.

## III.   STATUTORY MAXIMUM SENTENCE

The maximum sentence for a violation of Count One of the Information is not more than four years' imprisonment; a maximum term of supervised release of one year; a maximum term of probation of five years; a maximum fine of $250,000; and a $100 mandatory victim's fund assessment fee.

## IV.   COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

If the defendant is an alien, the conviction may cause the defendant to be deported and removed from the United States, or confined indefinitely if there is no

country to which the defendant may be deported, denied future admission into the
United States, and/or to be denied citizenship.

## V.    STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part
of its sentencing methodology, compute the advisory guideline range for the offense of
conviction, consider relevant conduct, and consider the other factors set forth in 18
U.S.C. § 3553, additional facts may be included below which are pertinent to those
considerations and computations. To the extent the parties disagree about the facts set
forth below, the stipulation of facts identifies which facts are known to be in dispute at
the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-
contradictory additional facts which are relevant to the Court's guideline computation, to
other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct:

From approximately August 2020 through March 2021, the defendant and her co-
conspirator, Eric Mortensen, worked out of their shared apartment in Denver, Colorado,
to distribute marijuana and THC.  The defendant and Mortensen purchased the
marijuana and THC from Colorado dispensaries, advertised the products on a particular
social media account (the "Social Media Account") and then sold the marijuana and
THC to customers around the United States using the U.S. mail.  The defendant was
largely responsible for obtaining the controlled substances from dispensaries (including
by using her medical marijuana license to purchase the drugs) and Mortensen was
responsible for advertising, packaging, and shipping the controlled substances, though

sometimes Mortensen also obtained the marijuana from dispensaries himself. The defendant's online postage account was used to purchase postage for the parcels containing controlled substances that were mailed to customers around the country. Together, the defendant and Mortensen worked to earn a profit from the drug sales. They received payment for the controlled substances in a variety of ways, including via electronic payment application and cash received in the mail.

For instance, on or about October 21, 2020, Mortensen mailed 14 parcels containing THC products (the "Parcels") to out-of-state customers from a Denver, Colorado post office. Ten of these parcels were seized and searched pursuant to a search warrant, but other parcels were allowed to enter the mail stream and continue to their destinations. The parcels each had a return address of "European Auto" or "European Auto Parts." The defendant used her medical marijuana license to purchase the controlled substances in the Parcels to sell to others via the U.S. Mail. In addition, during the timeframe of the conspiracy, Mortensen created an online postage account in the defendant's name. The defendant was aware that Mortensen created this account. With the defendant's knowledge, Mortensen used the defendant's online postage account to pay for the shipping on these Parcels so that they could be sent through the U.S. Mail. On or about October 27, 2020, an undercover officer called the defendant about the Parcels. The defendant claimed that she runs a business called "European Auto Parts" and uses her online postage account in connection with that business and stated that she dropped off Parcels at the Denver Downtown Post Office the week prior. The defendant admits that all of the Parcels—including the Parcels that were not seized and instead were sent through the U.S. Mail—contained controlled substances.

On or about March 25, 2021, a search warrant was executed at the defendant and Mortensen's shared apartment in Denver, Colorado.  During execution of the search warrant, officers located, among other things, marijuana and THC in dispensary packaging, organized and ready for sale; approximately $12,000 cash; packaging materials such as envelopes and tape; and four firearms that Mortensen had previously displayed in videos he posted on the Social Media Account.

## VI.    ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory Guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the Guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate.  The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range.  To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

Count One

      a)     The Guideline applicable to 21 U.S.C. § 843(b) is U.S.S.G. § 2D1.6, which points to U.S.S.G. § 2D1.1.

b) It is the Government's view that the defendant and Mortensen distributed or possessed with the intent to distribute approximately 7.38 kilograms of THC and approximately 18.73 kilograms of marijuana, for a total of approximately 1,250 kilograms of converted drug weight. Pursuant to the Government's calculation, because the defendant is responsible for 1,250 kg of converted drug weight, pursuant to U.S.S.G. § 2D1.1(c)(5), the base offense level is 30. The defendant is free to argue that the base offense level, based on drug weight, should be lower.

c) Because a firearm was possessed, two levels are added pursuant to U.S.S.G. § 2D1.1(b)(1).[1] The defendant takes the position that this enhancement does not apply.

d) Because the conspiracy distributed a controlled substance through mass-marketing by means of an interactive computer service, two levels are added pursuant to U.S.S.G. § 2D1.1(b)(7).

e) It is the Government's position that, because the defendant and her co-conspirator maintained a premises for the purpose of manufacturing or distributing a controlled substance, two levels are added pursuant to U.S.S.G. § 2D1.1(b)(12). The defendant takes the position that this enhancement does not apply.

f) Because the defendant meets the criteria set forth in subdivisions (1)-(5) of subsection (a) of U.S.S.G. § 5C1.2, two levels are subtracted pursuant to U.S.S.G. § 2D1.1(b)(18).[2]

g) It is the Government's view that the adjusted offense level for Count One is 34. The defendant's view is that the adjusted offense level for Count One is 30 or lower.

Total offense level

h) The defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and a further one level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b). It is the Government's view that the resulting total offense level is 31. The defendant's view is that the resulting total offense level

---

[1] It is the Government's view that, pursuant to U.S.S.G. § 1B1.3(a)(1)(B), the use of firearms by co-defendant Eric Mortensen was within the scope of the jointly undertaken activity, in furtherance of that criminal activity, and was reasonably foreseeable to the defendant in connection with that criminal activity.
[2] A finding that U.S.S.G. § 2D1.1(b)(1) applies to a particular defendant does not preclude that defendant's safety-valve eligibility. United States v. Pena-Sarabia, 297 F.3d 983, 987-88 (10th Cir. 2002).

is 27 or lower.

    i)   The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions.  The parties believe the defendant is in criminal history category I.

    j)   The career offender/criminal livelihood/armed career criminal adjustments do not apply.

    k)   The advisory Guideline range resulting from the Government's calculations is 108-135 months.  The advisory Guidelines range resulting from the defendant's calculations is no more than 70-87 months.  However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above at offense level 31 could conceivably result in a range from 108 months (bottom of Category I) to 235 months (top of Category VI).  At offense level 27, the range could be from 70 months to 162 months.  The Guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.  **The statutory maximum for the count of conviction, however, is 48 months.  The defendant's Guidelines range is therefore 48 months pursuant to the Government's calculation or no more than 48 months pursuant to the defendant's calculation.**

    l)   Pursuant to U.S.S.G. § 5E1.2, assuming an estimated offense level of 31, the fine range for this offense would be $30,000 to $250,000 plus applicable interest and penalties.  At offense level 27, the fine range would be $25,000 to $250,000.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory Guidelines (in length or form), within the advisory Guideline range, or above the advisory Guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.    ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 6/9/22

MELISSA CHARRAN
Defendant

Date: 6/9/22

Andres Guevara
Attorney for Defendant

Date: 6/9/22

Andrea Surratt
Assistant U.S. Attorney

**ATTACHMENT A**

| | Asset (USPIS) |
|---|---|
| a. | 2017 Black BMW 540 Sedan, VIN WBAJE7C30HG888835 |
| b. | $7,114.00 United States currency; |
| c. | Approximately $53,751.28 from BMO Harris Bank Acct #4829103523 in the name of Eric Mortensen; |
| d. | Approximately $49,157.92 from TruStone Financial Acct Checking #2 Member #373346 in the name of Eric Mortensen; |
| e. | 1.0000 Bitcoin (BTC); |
| f. | 4.05735328 Bitcoin (BTC); |
| g. | Funds in Venmo Account #29869243 in the name of Eric Mortensen; |
| h. | 0.00838345 Ethereum (ETH); |
| i. | 0.00030101 Chainlink (LINK); |
| j. | 0.98828 Stellar (XLM); |
| k. | 0.006799 USC Coin (USDC); |
| l. | 1.119154 Tezos (XTZ); |
| m. | 0.11392 Cosmos (ATOM); |
| n. | 0.09285289 Kyber (KNC); |
| o. | 0.041388 Algorand (ALGO); |
| p. | 0.00000531 0x (ZRX); |
| q. | 0.0696 EOS; |
| r. | 0.00014666 Compound (COMP); |
| s. | 0.00731306 Band Protocol (BAND); |
| t. | 0.07652384 OMG Network (OMG); |
| u. | 0.00976552 Celo (CGLD); |
| v. | Zales Men's Ring; |
| w. | Zales Women's Ring; |
| x. | Samsung Galaxy S10+ SM-G975U Cell Phone; IMEI 354667100141454; |
| y. | Apple iPhone 12; SN F17DKEBL0DXQ; |
| z. | Acer Chromebook Model N16Q10; SN NXGL4AA008751167E47600; |
| aa. | Amazon Fire Tablet Model SL056ZE; |
| bb. | HP Envy x360 Laptop Model 15m-ee0013dx; SN: CND0457DWX; |
| cc. | USB Flash Drive; |

| | Asset (ATF) |
|---|---|
| dd. | Merak Savunma Sanayi, LTD 301 Shotgun CAL:12 SN:20PA12Z-5225; |
| ee. | Kimber Micro 9 Rapide Pistol CAL:9 SN:PB0354671; |
| ff. | 6 Rounds CBC- Brazilian Cartridge Company Ammunition CAL:9; |
| gg. | Walther CCP Pistol CAL:9 SN:WK101181; |
| hh. | 16 Rounds CBC-Brazilian Cartridge Company Ammunition CAL:9; |
| ii. | Ruger PC Charger Pistol CAL:9 SN:913-17551; |
| jj. | 728 Rounds Assorted Ammunition CAL:9; |
| kk. | 50 Rounds Assorted Ammunition CAL:12; |