IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 21-cr-00115-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

2.  MELISSA CHARRAN,

    Defendant.

---

### GOVERNMENT'S RESPONSE TO DEFENDANT'S PSR OBJECTIONS

---

The United States of America, by and through the undersigned Assistant United States Attorney, respectfully submits the following response to the defendant's objections to the Presentence Investigation Report ("PSR"). ECF #105.

<u>Paragraph 27 – Enhancement pursuant to U.S.S.G. § 2D1.1(b)(1)</u>.  On multiple occasions, co-defendant Eric Mortensen possessed firearms in furtherance of the drug trafficking offense in this case.  Specifically, Mortensen displayed firearms while advertising for sale on a social media account the marijuana and THC products that Mortensen and the defendant sold.

The defendant contends that, although she purchased the firearms and they were located in their shared apartment, she had no idea that Mortensen used the firearms to create the social media videos that the defendant and Mortensen used to sell drugs.  Although the Government has no direct proof that the defendant was present when Mortensen created the social media videos, the defendant's argument

1

belies common sense.  The defendant and Mortensen were in a romantic relationship at the time of the offense conduct—indeed, she was pregnant with his child at the time of her arrest in this case—and they shared a small downtown apartment.  Neither the defendant nor Mortensen had any job other than selling marijuana and THC via the mail.  The idea that Mortensen purposefully waited until the defendant was out of the apartment before he used her guns to make social media videos—and then carefully placed the guns back such that she would not notice that he had touched them—is simply unbelievable.

Further, the U.S.S.G. § 2D1.1(b)(1) enhancement also applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  U.S.S.G. § 2D1.1 App. Note 11(A).  Here, although the defendant claims that she purchased the guns for personal protection, it cannot be said that it was "clearly improbable" that the weapons in the apartment were not connected to the offense, and the enhancement applies for this independent reason as well.

Accordingly, pursuant to U.S.S.G. § 1B1.2(a)(1)(B), because Mortensen's use of firearms was within the scope of jointly undertaken criminal activity, in furtherance of that criminal activity, and reasonably foreseeable to the defendant, and also because it was not "clearly improbable" that the guns were not connected to the offense, the U.S.S.G. § 2D1.1(b)(1) enhancement applies to this defendant.

Paragraph 33 – Safety valve eligibility. Although the Government agrees with Probation that the U.S.S.G. § 2D1.1(b)(1) enhancement applies to this defendant, it agrees with the defendant that the defendant should nevertheless receive the benefit of the two-level safety-valve credit pursuant to U.S.S.G. § 2D1.1(b)(18).

After *United States v. Pena-Sarabia*, 297 F.3d 983 (10th Cir. 2002), a defendant may simultaneously be eligible for safety-valve credit while also being held responsible for a co-defendant's possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1). Specifically, in that case, the Court noted that U.S.S.G § 5C1.2—the provision that enumerates the qualifications for safety-valve credit pursuant to U.S.S.G. § 2D1.1(b)(18)—requires that the defendant "not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." U.S.S.G. § 5C1.2(a)(2). Application Note 4 to this section further explains: "Consistent with § 1B1.3 (Relevant Conduct), the term 'defendant,' as used in [U.S.S.G. § 5C1.2](a)(2), limits the accountability of the defendant to his own conduct and conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. § 5C1.2 App. Note 4. The Court contrasted this Application Note with the language of U.S.S.G. § 1B1.3(a)(1)(B), which also contains a *second* definition of relevant conduct, that is: "all reasonably foreseeable acts and omissions of others in furtherance of [a] jointly undertaken criminal activity."

Accordingly, the Court concluded, a reading that the U.S.S.G. § 5C1.2(a)(2) safety-valve provision forecloses application of the safety-valve based on "a joint criminal actor's reasonably foreseeable possession of a firearm" would "effectively incorporate[] relevant conduct under subsection (1)(B) of § 1B1.3 as an additional safety valve requirement" which would, in turn "render[] superfluous the language in § 5C1.2(2) indicating the safety valve may apply if the defendant did not possess a

3

firearm 'or induce another participant to do so.'"  *Pena-Sarabia*, 297 F.3d at 988.  The Court then held—overruling its own prior precedent—that "a joint criminal actor's firearm possession is not attributable to a defendant for purposes of applying the mandatory minimum safety valve provision of U.S.S.G. § 5C1.2[a](2), unless the defendant induced such possession in accordance with § 5C1.2[a](2) comment. (n.4)."  *Id.*

Accordingly, a defendant may be responsible for a co-defendant's use of firearms for purposes of the U.S.S.G. § 2D1.1(b)(1) enhancement if the co-defendant's use of the firearms was within the scope of jointly undertaken criminal activity, in furtherance of that criminal activity, and reasonably foreseeable to the defendant, but that same defendant may nevertheless be eligible for the safety valve if she did not possess the guns herself in connection with the offense or induce the co-defendant's possession of the guns.  Here, although the firearms in the apartment were the defendant's, and it is unbelievable to conclude that the defendant was not aware that Mortensen was using them, there is no evidence whatsoever that the defendant induced Mortensen's possession of the guns or possessed them herself "in connection with the offense."  Accordingly, although the U.S.S.G. § 1B1.2(a)(1)(B) two-level enhancement applies to the defendant, she is nevertheless eligible for the U.S.S.G. § 2D1.1(b)(18) two-level benefit for meeting the requirements of U.S.S.G. § 5C1.2.

<u>Footnote 2 – Use of a state affidavit in calculating drug weight</u>.  The defendant objects to the PSR's use of a state affidavit authored by "SA Pennington"—not the federal case agent in this case—as described in footnote 2.  As the PSR notes, the undersigned AUSA was contacted about this affidavit, and the undersigned AUSA indicated that she was not aware of the analysis contained in that affidavit since it was

4

in connection with a state tax case, not the instant federal case.  In any event, as also noted in the PSR, inclusion of an additional 156.65 pounds of marijuana would not affect the Guidelines calculation in this case.[1]

<u>THC Drug Conversion</u>.  The defendant argues, as did her co-defendant, that the THC drug conversion ratio is not based on empirical data or evidence and so should not be used to calculate her Guidelines range.  The Government responded to this argument at length in its sentencing statement pertaining to defendant Mortensen at ECF #99 and adopts that same argument here.

Respectfully submitted this 10th day of July, 2023.

COLE FINEGAN
United States Attorney

By:   <u>s/ Andrea Surratt</u>
Andrea Surratt
Assistant United States Attorney
U.S. Attorney's Office
1801 California St., Suite 1600
Denver, CO 80202
Telephone: (303) 454-0100
e-mail:  Andrea.Surratt@usdoj.gov
Attorney for the Government

---

[1] It is also not clear whether this amount is already accounted for in the parties' estimate of drug weight in this case.